## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BRIAN DOWLING,**

        **Plaintiff,**

vs.                               **CASE NO. 8:06-CV-562-T-27TGW**

**MICHAEL E. DAVIS and**
**EMILY SEIBEL,**

        **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Dismiss (Dkt. 8) and Plaintiff's Response (Dkt. 9). Upon consideration, Defendants' Motion to Dismiss is DENIED.

### Factual Background

On May 1, 2002, a judgment was entered in an Illinois state court in favor of Plaintiff Brian Dowling ("Plaintiff") and against Defendant Michael E. Davis ("Davis") in the amount of $282,280.46. (Dkt. 1, ¶ 7). On October 29, 2002, a judgment was entered for attorney's fees in favor of Plaintiff and against Davis in the sum of $525,550.29. (Dkt. 1, ¶ 7). Plaintiff, therefore, holds judgments against Davis in the amount of $807,830.75. (Dkt. 1, ¶ 7).

Prior to December 2002, Davis submitted loan documents to a lender and obtained a loan in the amount of $1.6 million, which was secured by property in Illinois. (Dkt. 1, ¶ 8). Plaintiff alleges that Davis submitted fraudulent loan documents to obtain the loan. (Dkt. 1, ¶ 8). Plaintiff further alleges that Davis used these funds to purchase property in St. Petersburg, Florida ("Florida property"). (Dkt. 1, ¶ 8). Specifically, Plaintiff alleges that between December 2002 and February 24, 2003, Davis transferred approximately $1.9 million, including the loan proceeds, from accounts

1

in Illinois to accounts held in Florida. (Dkt. 1, ¶ 9). Defendant Emily Seibel ("Seibel") allegedly assisted in this transfer. (Dkt. 1, ¶ 9).

Seibel and Davis were married on February 20, 2003. (Dkt. 1, ¶ 10). On February 24, 2003, Defendants purchased the Florida property for a cash sum of $1,955,144.72. (Dkt. 1, ¶ 11). Defendants claim to own the property (and its contents) as tenants by the entireties. (Dkt. 1, ¶ 11). Defendants claim the Florida property is their homestead. (Dkt. 1, ¶ 11).

Plaintiff alleges that Defendants were aware of Plaintiff's judgment against Davis at the time the Florida property was purchased and that Defendants transferred and converted assets with actual intent to hinder, delay or defraud Plaintiff. (Dkt. 1, ¶¶ 13, 15). Plaintiff claims fraudulent asset conversion pursuant to the Fraudulent Asset Conversions statute ("FAC statute"), Fla. Stat. § 222.30 (Count I), seeks imposition of an equitable lien on the Florida property (Count II), and claims fraudulent asset transfer pursuant to the Fraudulent Transfers statute ("FT statute"), Fla. Stat. §§ 726.101 *et seq.* (Count III).

## Applicable Standard

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *accord South Florida Water Management Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**Discussion**

I.      Fraudulent Asset Conversion and Equitable Lien

      A.      Homestead Exemption

Plaintiff alleges Davis converted assets by transferring non-exempt property into an allegedly exempt homestead and by transferring non-exempt property into allegedly immune tenancy by the entireties. In doing so, Plaintiff alleges that Defendants violated the FAC statute.

To plead an action seeking relief under the FAC statute, Plaintiff must assert: 1) a conversion by a debtor of an asset(s); 2) the conversion resulted in an exemption from the claims of creditors; and 3) the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.[1] Fla. Stat. § 222.30(2). Defendants do not dispute that Plaintiff's complaint asserts each of these elements for a cause of action for fraudulent asset conversion. (Dkt. 1, ¶¶ 18, 20). Notwithstanding, Defendants claim the Florida property is their homestead and is therefore exempt from claims of creditors pursuant to the Florida Constitution, Article X, Sec. 4. (Dkt. 8, p. 3).

The Florida Constitution provides that:

> (a)      There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1)      a homestead . . ..

Fla. Const. Art. X, Sec. 4. This provision shields homestead owners from the claims of creditors, but states three exceptions to this protection: 1) payment of taxes or assessments on the homestead; 2) obligations contracted for purchase, improvement or repair of the homestead; and 3) obligations

---

[1] Conversion is defined as "every mode, direct or indirect, absolute or conditional, or changing or disposing of an asset, such that the products or proceeds of the asset become immune or exempt by law from claims of creditors of the debtor and the products or proceeds of the asset remain property of the debtor." Fla. Stat. § 222.30(1).

3

contracted for house, field or other labor performed on the homestead property. *Id.*

The homestead exemption is to be liberally construed in the interest of protecting the family home, but the exemption is not to be so liberally construed as to make it an instrument of fraud or imposition upon creditors. *Havoco of America, Ltd. v. Hill*, 790 So. 2d 1018, 1020 (Fla. 2001) ("*Havoco I*") (*citing Milton v. Milton*, 63 Fla. 533, 536 (1912)). The homestead exemption does not contain an express exception for real property that is acquired in Florida for the sole purpose of defeating the claims of out-of-state creditors. *Bank Leumi Trust Co. v. Lang*, 898 F. Supp. 883, 887 (S.D. Fla. 1995). However, the Eleventh Circuit certified to the Florida Supreme Court the question of whether "Article X, Section 4 of the Florida Constitution exempt[s] a Florida homestead, where the debtor acquired the homestead using non-exempt funds with the specific intent of hindering, delaying, or defrauding creditors in violation of Fla. Stat. § 726.105 or Fla. Stat. §§ 222.29 and 222.30." *Havoco of America, Ltd. v. Hill*, 197 F.3d 1135, 1144 (11th Cir. 1999) ("*Havoco II*"). The Florida Supreme Court answered in the affirmative and declared that "[t]he transfer of non-exempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is *not* one of the three exceptions to the homestead exemption provided in article X, section 4. Nor can [the Court] reasonably extend [its] equitable lien jurisprudence to except such conduct from the exemption's protection." *Havoco I*, 790 So. 2d at 1028 (*emphasis added*).

Notwithstanding, courts have "strayed from the literal language of the exemption where the equities have demanded it." *Havoco I*, 790 So. 2d at 1023. The Florida Supreme Court has "invoked equitable principles to reach beyond the literal language of the exceptions [to the homestead exemption in the Florida Constitution] only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." *Id.* at 1028.

Plaintiff's Complaint alleges that the funds used by Defendants to purchase the Florida property came from a fraudulently-obtained bank loan. Therefore, accepting Plaintiff's allegations

4

as true and, thereby, assuming that the bank loan was fraudulently obtained, Defendants' actions fit within this potential exception carved out of the Florida homestead exemption by the Florida Supreme Court. Accordingly, this Court may "reach beyond the literal language of the exceptions" as a matter of equity because funds allegedly "obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." *See Havoco I*, 790 So. 2d at 1028. In this regard, Plaintiff's Complaint states a claim of fraudulent asset conversion.

     B.     Equitable Lien

Plaintiff alleges that the funds used to purchase the Florida property can be directly traced to the fraudulently-obtained loan, and that Plaintiff is entitled to an equitable lien on the Florida property to the full extent of the value of his judgments against Davis. (Dkt. 1, ¶¶ 25-27). The imposition of an equitable lien is the "exclusive relief available to an aggrieved party" where "a debtor has utilized funds procured by fraud or improper conduct to purchase, improve, or invest in homestead property." *In re Lee*, 223 B.R. 594, 601 (Bankr. M.D. Fla. 1998). Equitable liens arise either from a written contract that shows an intention to charge some particular property with a debt or obligation, or are declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealing in the particular case. *Jones v. Carpenter*, 106 So. 2d 127, 129 (Fla. 1925).

Equitable liens may be imposed in limited circumstances where a debtor fraudulently procured funds to invest in, purchase, or improve a homestead. *See Palm Beach Savings & Loan Assoc. v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993); *Jones*, 106 So. 2d at 129. "[I]f it is established by competent proof that the debtor who is claiming the homestead exemption acquired the homestead by fraudulently-obtained funds or by embezzlement, it is appropriate to impose an equitable lien . . . ." *In re Adell*, 321 B.R. 562, 569-70 (Bankr. M.D. Fla. 2005). Circumstances surrounding the imposition of such liens are "very limited." *In re Potter*, 320 B.R. 753, 757 (Bankr.

M.D. Fla. 2005).

Defendants argue that "Plaintiff must at a minimum establish that the funds invested into homestead property were the subject of ill-gotten gains *from the Plaintiff*. . . . [A]n equitable lien theory relies upon the creditor asserting the claim being able to trace *its* funds to the homestead." (Dkt. 8, pp. 6-7).  However, the controlling Florida Supreme Court case, *Havoco I*, only indicates that courts may "reach beyond the literal language of the [three] exceptions [in the Florida Constitution, Article X, Sec. 4]. . . where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead." *Havoco I*, 790 So. 2d at 1028.   The Court does not specify that "funds obtained through fraud or egregious conduct [that] were used to invest in, purchase, or improve the homestead" must be traceable to the objecting creditor.[2]

At this stage of proceedings, Plaintiff need not prove that the homestead was actually acquired by fraudulently-obtained funds.  Plaintiff must only allege sufficient facts to state his claim, which he does in his Complaint by alleging that "Davis fraudulently submitted loan documents and other documents to a lender in order to obtain a loan . . . ." (Dkt. 1, ¶ 8).  Therefore, even though courts impose equitable liens in very limited circumstances, it does not appear "beyond a doubt" that Plaintiff cannot prove such facts which would create a cause of action for which an equitable lien may be imposed. *See Conley*, 355 U.S. at 45-46.

C.      Cause of Action Against Seibel

Defendants argue that Plaintiff's allegations of fraudulent conduct by Seibel are insufficient to state a claim.  (Dkt. 8, p. 9).  In this regard, Defendants argue that the allegations against Seibel

---

[2] Defendants maintain that courts have denied issuing equitable liens on homestead property "when the funds used by the [d]ebtor to obtain the property are not traceable to the objecting creditor." *In re Popek*, 188 B.R. 701, 703 (Bankr. S.D. Fla. 1995) (*citing Bank Leumi Trust Co.*, 898 F. Supp. at 888-89); *see also In re Clements*, 194 B.R. 923, 926 (Bankr. M.D. Fla. 1996) (*citing In re Lane (Ezrol v. Lane)*, 190 B.R. 125 (Bankr. S.D. Fla. 1995)).  While these cases are persuasive authority, they are not binding on this Court.  Therefore, it is not "beyond doubt" that Plaintiff does not state a claim. *See Conley*, 355 U.S. at 45-46.  The controlling case, *Havoco I*, does not specify that the fraudulently-obtained funds must be traceable to the objecting creditor.

lack specificity and are too general to meet the pleading requirement of Federal Rule of Civil Procedure 9(b). (Dkt. 8, pp. 9-10).

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. *Brooks v. Blue Cross & Blue Shield of Fla.*, 11 F.3d 1364, 1371 (11th Cir. 1997) (*citations omitted*); *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (the application of Rule 9(b) must not abrogate the concept of notice pleading). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham*, 847 F.2d at 1512.

On the face of the Complaint, Plaintiff specifically avers that Seibel participated in each element of fraudulent asset conversion. Seibel assisted in transferring a non-exempt asset and using that money to purchase the Florida property as an exempt homestead. (Dkt. 1, ¶¶ 9, 11). Seibel was "active and knowing" in assisting in the transfer and conversion of assets "with the actual intent to hinder, delay or defraud" Plaintiff. (Dkt. 1, ¶ 15). Plaintiff specifies the dates of each of these actions. (Dkt. 1, ¶¶ 7-15).

Consequently, Plaintiff's Complaint is adequate in specifically notifying Seibel of the grounds upon which Plaintiff seeks relief and specifically averring the circumstances constituting fraudulent conduct. As with the fraudulent asset conversion claim against Davis, an equitable lien may also be

imposed against Seibel.[3]  Accordingly, Defendants' Motion to Dismiss as to Counts I and II is

DENIED.

II.    Fraudulent Transfers

Defendants argue that Count III must be dismissed for lack of pleading specificity because

Plaintiff's Complaint does not sufficiently specify the basis for its fraudulent transfer claim.  (Dkt.

8, p. 11).  Federal Rule of Civil Procedure 8(a) requires "a short, plain statement of the claim showing

that the pleader is entitled to relief."  On the face of the Complaint, Plaintiff provides such a statement

by describing the transfers in question and alleging that the transfers "were made with actual intent

to hinder, delay, and defraud" Plaintiff.  (Dkt. 1, ¶¶ 30-31).  The language of the Complaint tracks the

language of the FT statute, which provides:

> (1)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the obligation was
> incurred, if the debtor made the transfer or incurred the obligation:
>
> (a)    With actual intent to hinder, delay, or defraud any creditor of the debtor.

Fla. Stat. § 726.105(1)(a).  Further, Plaintiff's Complaint provides details regarding the transfer, also

tracking the language of Fla. Stat. § 726.105(2), which provides factors to which consideration may

be given in determining actual intent under Fla. Stat. § 726.105(1)(a).  The Complaint alleges that

---

[3] Given this Court's conclusion that Plaintiff's Complaint states a fraudulent asset conversion claim against both Davis and Seibel, there is no need to address Defendants' additional argument that Plaintiff's Complaint fails because the property at issue is held as a tenancy by the entireties. (Dkt. 8, p. 11). Generally, as argued by Defendants, creditors cannot attach tenancies by the entireties property if the creditor has a judgment against only one spouse. *See Miller v. Rosenthal*, 510 So. 2d 1127, 1128 (Fla. Dist. Ct. App. 1987). However, if the creditor has a judgment against both spouses, the creditor may attach tenancy by the entireties property. *See Beal Bank, SSB v. Almand and Assocs.*, 780 So. 2d 45, 53 (Fla. 2001). "[W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse." *Id.*; *see also In re Mastrofino*, 247 B.R. 330, 331 (Bankr. M.D. Fla. 2000) ("under the common law of this State, property held by husband and wife as tenants by the entireties is immune from process and can only be reached by creditors who hold a valid claim against both tenants"). Because the Plaintiff's Complaint states fraudulent asset conversation claims against both Defendants and Plaintiff could potentially obtain a judgment against both Defendants on those claims, Plaintiff may ultimately be able to attach the property despite the fact that it is held as a tenancy by the entireties. *See Beal Bank, SSB*, 780 So. 2d at 53. Dismissal is, therefore, not appropriate on this basis.

the transfers were made to an insider, which meets the first criteria under § 726.105(2)(a) and that the debtor retained possession or control of the property after the transfer, which meets the second criteria under § 726.105(2)(b). (Dkt. 1, ¶¶ 32-33). Therefore, Count III of Plaintiff's Complaint sufficiently states a fraudulent transfer claim. Defendants' Motion to Dismiss Count III is DENIED.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss (Dkt. 8) is **DENIED**.

**DONE AND ORDERED** in chambers this _10_ th day of August, 2006.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record