UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BRIAN DOWLING,**

    **Plaintiff,**

vs.                                        Case No.: 8:06-CV-562-T-27TGW

**MICHAEL E. DAVIS and
EMILY SEIBEL,**

    **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment (Dkt. 27), to which Plaintiff has responded in opposition (Dkt. 37). Upon consideration, Defendants' Motion for Summary Judgment is granted in part and denied in part as set forth herein.

### *Background*

Plaintiff Brian Dowling ("Plaintiff") initiated this action seeking to set aside what he alleges were fraudulent transfers and fraudulent asset conversion by Defendant Michael E. Davis ("Davis") for the purpose of avoiding liability on outstanding judgments in favor of Plaintiff. Specifically, on May 1, 2002, a judgment was entered in Illinois state court in favor of Plaintiff and against Davis in the amount of $282,280.46. (Dkt. 1, ¶ 7). On October 29, 2002, a judgment was entered for attorneys' fees in favor of Plaintiff and against Davis in the amount of $535,550.29. (Dkt. 1, ¶ 7). On August 28, 2003, a memorandum of judgment was entered by the clerk in the amount of $817,830.75. (Dkt. 28-13).

The Defendants in this action, Davis and Emily Seibel ("Seibel"), were married on February

1

20, 2003. (Davis Aff. ¶ 9, Exh. H). On February 24, 2003, Defendants purchased, as tenants by the entirety, a residence in St. Petersburg, Florida ("Florida residence"). (Davis Aff. ¶ 11). The purchase money of $1,904,394.72 for the Florida residence was comprised of a loan from North Shore Bank and Davis's personal funds from several bank accounts. (Davis Aff. ¶ 11).

The loan from North Shore Bank, for the amount of $1,664,000.00, was obtained by 4637 Manor LLC ("Manor LLC"), an Illinois limited liability company for which Davis was the manager and owned a seventy-five percent interest. (Davis Aff. ¶ 2). Manor LLC authorized the loan through Davis, as manager, and Earl Davis, as Trustee of the Davis Trust. (Dkts. 28-7; 28-8).[1] The loan was secured by Davis's residence at 4637 Manor Drive in Illinois ("Illinois residence"), which was the primary asset of Manor LLC, as well as a deposit account with $65,000, which was a portion of the loan proceeds. (Davis Aff. ¶ 2; Davis Dep. at 110). Davis also personally guaranteed the loan. (Davis Aff. ¶ 4). Manor LLC then transferred the loan proceeds to Davis, which he maintains was for two purposes: (1) to repay a 1997 loan by Davis to Manor LLC for construction on the Illinois residence; and (2) to loan Davis funds to purchase the Florida residence, as part of the liquidation of Manor LLC. (Davis Aff. ¶ 2; Davis Dep. at 57-65). However, North Shore Bank foreclosed on the Illinois residence, due to non-payment on the $1,664,000.00 loan, before Manor LLC was liquidated. (Davis Dep. at 65-66).

Between October 2002 and February 2003, Davis transferred funds from his four personal bank accounts to a bank account in Florida, held in the names of both Davis and Seibel. (Davis Dep. 38-40, 75-78; Dkt. 37-6). Manor LLC transferred approximately $35,000 in furniture, art, rugs, and the remaining contents of the Illinois residence to Seibel, personally, which Defendants maintain was

---

[1] Davis and the Davis Trust hold the two membership interests in Manor LLC. (Davis Dep. at 60).

in payment for services rendered and out-of-pocket expenses incurred during the renovation of the Illinois residence in the summer of 2003. (Seibel Dep. 95, 100-01, 117-20; Davis Dep. at 115-16). Plaintiff alleges that Seibel currently owns a vehicle that was previously owned by Davis and passed through another owner before being sold to her for approximately $1500.00. (Seibel Dep. at 101-05). Plaintiff also alleges that the closing on the Florida residence included the placement of $200,000 into an escrow account, purportedly under the protection of Florida's homestead law, for renovations, the majority of which Plaintiff contends have not occurred.[2] (Dkt. 37-11 at 44).

In light of the foregoing, Plaintiff alleges that Defendants were aware of Plaintiff's pending judgment against Davis and that Davis, with the assistance of Seibel, transferred and converted assets with intent to hinder, delay or defraud Plaintiff. Plaintiff claims fraudulent asset conversion pursuant to Fla. Stat. § 222.30 (Count I), seeks imposition of an equitable lien on the Florida residence (Count II), and claims fraudulent transfer pursuant to Fla. Stat. §§ 726.101 *et seq.* (Count III). In the instant motion, Defendants maintain that Florida's constitutionally-created homestead exemption protects their Florida residence, and that Plaintiff is unable to attach bank accounts and other personal property owned by Seibel individually and as tenants by the entirety with Davis.

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477

---

[2] Seibel testified that they intended to refinish the pool, redo the patio, replace carpeting, reconfigure space, change walls, add a bath, and change the staircase, although only the first two items were completed. (Seibel Dep. at 81-82, 85-86).

Plaintiff also alleges that when the records for the home improvement fund showed a deficit, a joint bank account in Seibel's name and her mother's name showed a corresponding increase. (Dkt. 37 at 7). The cited documents do not support this contention. (Dkt. 38-3).

3

U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### *Discussion*

**1.**     ***Florida residence and homestead exemption***

Defendants first argue that their Florida residence is homestead property entirely exempt from claims of creditors, such as Plaintiff, pursuant to the Florida Constitution, Article X, Sec. 4. This Court agrees. The Florida Constitution provides:

(a) There shall be exempt from forced sale under process of any court, and no

> judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
> (1)    a homestead . . . . Fla. Const. Art. X, Sec. 4.[3]

This provision shields homestead owners from the claims of creditors, but contains three exceptions to this protection: 1) payment of taxes or assessments on the homestead; 2) obligations contracted for purchase, improvement or repair of the homestead; and 3) obligations contracted for house, field or other labor performed on the homestead property. *Id.* By contrast, the Florida Supreme Court has expressly held that "[t]he transfer of nonexempt assets into an exempt homestead with the intent to hinder, delay, or defraud creditors is *not* one of the three exceptions to the homestead exemption provided for in article X, section 4." *Havoco of Am., Ltd. v. Hill*, 790 So. 2d 1018, 1028 (Fla. 2001) ("*Havoco I*") (emphasis added); *Havoco of Am., Ltd. v. Hill*, 255 F.3d 1321, 1322 (11th Cir. 2001) ("*Havoco II*") ( affirming that judgment debtor's purchase of home with intent to hinder creditors did not overcome homestead exemption, based on answer to certified question in *Havoco I*). This is precisely what Plaintiff is alleging Defendants sought to accomplish by purchasing the Florida residence. For this reason, Plaintiff's claim fails.

Although the Florida Supreme Court has "strayed from the literal language of the exemption where the equities have demanded it," it has "done so rarely and always with due regard to the exceptions provided in article X, section 4." *Id.* at 1020. As the court noted in *Havoco I*:

> Virtually all of the relevant cases involve situations that fell within one of the three stated exceptions to the homestead provision. Most of those cases involve equitable liens that were imposed where proceeds from fraud or reprehensible conduct were used to invest in, purchase, or improve the homestead. Other relevant cases cited involve situations where an equitable lien was necessary to secure to an owner the benefit of his or her interest in the property. . . . In no other case has this Court

---

[3] In the instant motion, Defendants do not address the personal property exemption under this section.

imposed a lien on a homestead beyond one of the three stated exceptions in the constitutional provision. *Id.* at 1027.

Thus, equitable liens may be imposed in limited circumstances where a debtor fraudulently procured funds to invest in, purchase, or improve a homestead. *See Palm Beach Savings & Loan Assoc. v. Fishbein*, 619 So. 2d 267, 270 (Fla. 1993) (affirming imposition of equitable lien against wife's residence where debtor husband obtained mortgage by fraud); *Jones v. Carpenter*, 106 So. 127, 129-30 (Fla. 1925) (affirming imposition of equitable lien in action by trustee of bankrupt corporation against former president for embezzling funds used to improve homestead). Plaintiff has failed to argue that this type of fraud was perpetrated against him.[4]

Instead, Plaintiff argues that the fraud occurred when Defendants, knowing a judgment was imminent, purchased a house with proceeds that could have been used to satisfy Plaintiff's judgment against Davis. Again, however, the homestead exemption does not contain an express exception for real property that is acquired in Florida for the sole purpose of defeating the claims of out-of-state creditors. *Havoco II*, 255 F.3d at 1322; *Havoco I*, 790 So. 2d at 1028; *Bank Leumi Trust Co. v. Lang*, 898 F. Supp. 883, 887 (S.D. Fla. 1995); *In re Adell*, 321 B.R. 562, 569-70 (Bankr. M.D. Fla. 2005). Indeed, in one of the primary cases relied upon by Plaintiff, the court specifically distinguished those cases in which a debtor owned the funds -- where an equitable lien is not proper -- from those cases in which a debtor purchased a residence with fraudulently-obtained funds. *In re Fin. Federated Title & Trust, Inc.*, 273 B.R. 706, 716 (Bankr. S.D. Fla. 2001) *aff'd* 347 F.3d 880 (11th Cir. 2003) (affirming imposition of equitable lien where funds were undisputedly obtained

---

[4] Plaintiff alleged in the Complaint that the funds were fraudulently obtained from North Shore Bank. (Dkt. 8). Plaintiff appears to have abandoned this argument, or, alternately, to have conceded that North Shore Bank is the proper party in interest to maintain such an action. (Dkt. 37 at 13-14). Courts have refused to institute equitable liens on homestead property "when the funds used by the [d]ebtor to obtain the property are not traceable to the objecting creditor." *In re Popek*, 188 B.R. 701, 703 (Bankr. S.D. Fla. 1995); *see also In re Clements*, 194 B.R. 923, 926 (Bankr. M.D. Fla. 1996).

through fraudulent Ponzi scheme).[5]

The Florida Supreme Court has repeatedly instructed that the exceptions to the homestead exemption are to be strictly construed. *Havoco I*, 790 So. 2d at 1021-22. Although equitable liens may be imposed in limited circumstances when a debtor fraudulently procures funds to invest in, purchase, or improve a homestead, Plaintiff has failed to meet his burden at summary judgment to rebut Defendants' argument that this exception is not applicable to the instant case. *See Celotex*, 477 U.S. at 323-24 (nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial). Defendant's motion for summary judgment is therefore granted as to Plaintiff's claim for an equitable lien (Count II). The homestead exemption also bars Plaintiff's claims for fraudulent asset conversion and fraudulent transfer (Counts I and III) to the extent Plaintiff seeks to recover against the Florida residence. *See Havoco I*, 790 So. 2d at 1029 (holding that legislature is powerless to affect rights provided under the homestead exemption through fraudulent transfer and fraudulent asset conversion statutes).

## 2. *Transfers of personal property*

Defendants also argue that Plaintiff may not recover personal property that Seibel owns individually and funds on deposit that Defendants allege are owned by them as tenants by the entirety. (Seibel Aff. ¶ 6). As a general principle under Florida law, no property owned by a

---

[5] Although not cited by Plaintiff, one court has imposed an equitable lien where a judgment debtor transferred funds to his daughter and son-in-law to satisfy a mortgage on their residence. *Babbit Elecs., Inc. v. Dynascan Corp.*, 915 F. Supp. 335, 337 (S.D. Fla. 1995). The court held that the transfer was made to delay, hinder, and defraud the defendant's judgment creditor in collection of its judgment and that imposition of an equitable lien would not change the position of the daughter and son-in-law. *Id.* at 338. However, this pre-*Havoco I* decision appears to be in conflict with the Eleventh Circuit's ultimate holding in *Havoco II* that the homestead exemption shields a debtor's purchase of a residence with non-exempt funds, even when the purchase is made with the intent to hinder a judgment creditor. *Havoco II*, 255 F.3d at 1322.

husband and wife, as tenancy by the entireties, is subject to execution to satisfy the individual judgment debt or other obligation of either party. *Meyer v. Faust*, 83 So.2d 847, 848 (Fla. 1955); *Miller v. Rosenthal*, 510 So. 2d 1127, 1128 (Fla. 2d DCA 1987). It is presumed that a bank account titled in the names of both spouses is held by the entireties, as long as the account is established in accordance with the unities of possession, interest, title, and time and with right of survivorship. *Beal Bank, SSB v. Almand and Assocs.*, 780 So. 2d 45, 58 (Fla. 2001). However, this protection does *not* limit a creditor's ability to proceed under other theories of recovery, such as Florida's Uniform Fraudulent Transfer Act (FUFTA).[6] *Id.* at 59 (emphasis added).

Defendants have not briefed the underlying merits of Plaintiff's fraudulent transfer and conversion claims, and neither party has indicated which provisions of FUFTA are applicable. *Cf.* Fla. Stat. § 726.105 (transfer fraudulent as to present and future creditors) and Fla. Stat. § 726.106 (transfer fraudulent as to present creditors only). Assuming the relevant statute is Fla. Stat. § 726.105, Defendants have not addressed the requisite elements contained in subsections (1)(a) or (1)(b), nor have they addressed the presence or absence of the statutory "badges of fraud." *See* Fla. Stat. § 726.105(1)(a)-(b); *see e.g., Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498 (11th Cir. 1997); *see also In re Levine*, 134 F.3d 1046, 1053 (11th Cir. 1998) (noting that

---

[6] FUFTA, as well as the fraudulent asset conversion statute, apply to a debtor's transfer or conversion of an "asset." Fla. Stat. § 726.102(12); Fla. Stat. § 222.30(1). "Asset" is defined as "property of the debtor, but the term does not include . . . an interest in property held in tenancy by the entireties." Fla. Stat. § 726.102(2)(c); *see also* Fla. Stat. § 222.30(1) (fraudulent asset conversion statute applies the definitions of the fraudulent transfer statute). Thus, Florida courts have held that a creditor has the initial burden to show that the entireties property was obtained with fraudulently acquired funds. *Beal Bank, SSB*, 780 So. 2d at 59 (citing *Ming Props., Inc. v. Stardust Marine S.A.*, 741 So. 2d 554, 556 (Fla. 4th DCA 1999). However, in the instant case, Plaintiff is not claiming that Davis fraudulently transferred tenancy by the entireties property. *Cf. Ming Props., Inc.*, 741 So. 2d at 555 (creditor was claiming property was already held by the entireties at the time it was transferred). Instead, Plaintiff is claiming that Davis transferred his individual funds into a tenancy by the entireties bank account with Seibel. Because the Florida Supreme Court has specifically noted that the existence of a tenancy by the entireties bank account does not limit a creditor's ability to proceed under the fraudulent transfer statute, Plaintiff must only show that the transfer was fraudulent under FUFTA. *Id.* at 59.

the fraudulent asset conversion and fraudulent transfer statutes are read in tandem and that § 222.30 is a specific subset of causes of action under § 726.105). For this reason, Defendants' motion is denied as to Count I and Count III to the extent Plaintiff seeks recovery of personal property.[7]

*Conclusion*

Upon consideration, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (Dkt. 27) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**DONE AND ORDERED** in chambers this 25th day of June, 2007.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to:
Counsel of Record

---

[7] As discussed in the preceding section, Florida's constitutional homestead exemption bars Plaintiff's claims in Counts I and III against the Florida residence.

9